UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NIKOLAS K. KALLAS,

                            CASE NO. 2:20-cv-11401

       *Plaintiff*,           DISTRICT JUDGE GEORGE CARAM STEEH
*v.*                        MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

     *Defendant.*

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 21, 24)**

I.     **RECOMMENDATION**

Considering the entire record in this case, I suggest that substantial evidence supports the Commissioner of Social Security's determination that Plaintiff, Nikolas Kallas, is not disabled. Accordingly, I recommend **DENYING** Plaintiff's motion for summary judgment, (ECF No. 21), **GRANTING** the Commissioner's motion, (ECF No. 24), and affirming the decision.

II.     **REPORT**

     A.     **Introduction and Procedural History**

Plaintiff filed an application for supplemental security income ("SSI") on November 4, 2016, alleging that his disability began on September 25, 2016. (ECF No. 25, PageID.825, 874.) His claim was initially denied on January 6, 2017. (*Id.* at PageID.825, 950.) Plaintiff requested a hearing before an ALJ which was held on December 18, 2018. (*Id.* at PageID.825.) The ALJ issued a decision on March 11, 2019, finding that Plaintiff

1

was not disabled within the meaning of the Social Security Act.  (*Id*. at PageID.822.)  The

Appeals Council denied review on January 24, 2020. (*Id*. at PageID.807.)

Plaintiff subsequently filed a complaint seeking judicial review of the ALJ's final

decision on May 14, 2020.  (ECF No. 1.)  On October 15, 2020, the Appeals Council

retroactively extended Plaintiff's deadline to request judicial review to May 14, 2020, the

date Plaintiff filed his complaint.  (ECF No. 25, PageID.815.)  This case was referred to

the undersigned on June 1, 2020.  (ECF No. 3.)  Both parties filed cross-motions for

summary judgment and briefing is complete.  (ECF Nos. 21, 24.)

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative

decision pursuant to 42 U.S.C. § 405(g) (2012).  The district court's review is restricted

solely to determining whether the "Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the record."

*Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal quotation

marks omitted).  Substantial evidence is "more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)

(internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider

any evidence in the record, regardless of whether it has been cited by the ALJ.  *See Walker*

*v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  The Court will not

"try the case de novo, nor resolve conflicts in the evidence, nor decide questions of

2

credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

If the Commissioner's decision is supported by substantial evidence, "it must be affirmed

even if the reviewing court would decide the matter differently and even if substantial

evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v.*

*Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than [twelve]
> months.

42 U.S.C. § 1382c(a)(3)(A) (2012). The Commissioner's regulations provide that

disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If
> you are doing substantial gainful activity, we will find that you
> are not disabled.
>
> (ii) At the second step, we consider the medical severity of your
> impairment(s). If you do not have a severe medically
> determinable physical or mental impairment that meets the
> duration requirement . . . or a combination of impairments that
> is severe and meets the duration requirement, we will find that
> you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of
> your impairment(s). If you have an impairment(s) that meets
> or equals one of our listings in appendix 1 of this subpart and
> meets the duration requirement, we will find that you are
> disabled.
>
> (iv) At the fourth step, we consider our assessment of your
> residual functional capacity and your past relevant work. If you

> can still do your past relevant work, we will find that you are
> not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your
> residual functional capacity and your age, education, and work
> experience to see if you can make an adjustment to other work.
> If you can make an adjustment to other work, we will find that
> you are not disabled.  If you cannot make an adjustment to other
> work, we will find that you are disabled.

20 C.F.R. § 404.1520 (2016); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534

(6th Cir. 2001).  "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by [his or] her impairments and the fact that [he or] she

is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  The claimant must provide evidence establishing

the residual functional capacity, which "is the most [the claimant] can still do despite [his

or her] limitations," and is measured using "all the relevant evidence in [the] case record."

20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2016).

The burden transfers to the Commissioner if the analysis reaches the fifth step

without a finding that the claimant is not disabled.  *Combs v. Comm'r of Soc. Sec.*, 459

F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that

"other jobs in significant numbers exist in the national economy that [the claimant] could

perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486

F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g) (2016)).

### D.   ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was

not disabled.  (ECF No. 25, PageID.837.)  At step one, the ALJ found that Plaintiff had not

engaged in substantial gainful activity since his alleged onset date of November 4, 2016. (*Id.* at PageID.827.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the left shoulder, generalized anxiety disorder with depressed mood, and a history of traumatic brain injury. (*Id.*) The ALJ also found that Plaintiff's gastroesophageal reflux disease was not a severe impairment. (*Id.*) At step three, the ALJ decided that none of Plaintiff's severe impairments met or medically equaled a listed impairment. (*Id.* at PageID.828–29.) Next, the ALJ determined that Plaintiff had a residual functioning capacity to perform light work,[1] except that Plaintiff:

> can frequently push and pull; cannot climb ladders, ropes, or scaffolds; can occasionally balance[,] stoop, kneel, crouch, and crawl; can frequently reach with his left arm; can occasionally operate foot pedals; must avoid extremes in cold temperatures and wetness; is limited to the performance of simple repetitive tasks; is limited to the performance of low stress work, defined as no independent work related decision making, and no regular changes in the work setting; must work at a job that allows for work to be done at a flexible pace; and should have no more than occasional interaction with the general public.

(ECF No. 25, PageID.829.) At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at PageID.835.) At step five, the ALJ found that jobs which Plaintiff could perform existed in significant numbers in the national economy. (*Id.*)

### E. Background

#### 1. Medical Evidence

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2016).

In September 2016, Plaintiff was electrocuted while trimming tree branches near a power line, causing him to fall twenty-five feet from his ladder.  (ECF No. 25, PageID.1142–43.)  Plaintiff "sustained a cardiac arrest" and was found lying on the ground, unresponsive.  Plaintiff was defibrillated, regained his vitals, and was transported to a hospital where he spent two weeks in the intensive care unit.  (*Id.*)  Plaintiff survived his injuries and, after receiving physical therapy, made a "miraculous recovery."  (*Id.* at PageID.831, 1107, 1142–43.)

Plaintiff was discharged from the hospital on October 20, 2016, but continued to experience memory loss and pain in his feet, lower back, and left shoulder.  (*Id.* at PageID.1055, 1254.)  MRI results revealed that his shoulder pain was caused by "low-grade muscle strain" with "mild posttraumatic subacromial-subdeltoid bursitis.  (*Id.* at PageID.1111–12.)  Based on the results of the MRI, Plaintiff's physician suggested that he treat his shoulder pain by applying ice and performing physical therapy.  *(Id.* at PageID.1154.)  In February, Plaintiff saw a neurologist for his shoulder pain; however, she found "no evidence of abnormality in any part of the shoulder."  (*Id.* at PageID.1308–09.)

In November 2016, Plaintiff met with Doctor Kevin Chaitoff about his back and leg pain.  (*Id.* at PageID.1165.)  Plaintiff specified that the pain in his back "radiat[ed] to the sole" and big toe "of [his] left foot."  (*Id.*)  He described this pain as a "sharp, shooting, burning pain, as if he had frostbite."  (*Id.* at PageID.832, 1298.)  Doctor Chaitoff examined Plaintiff and found a normal range of motion in Plaintiff's lumbar, hips, and legs. Plaintiff's straight leg raise tests were negative, his sensation was intact, he displayed normal motor strength in his extremities, and he walked with a normal gait.  (*Id.* at

PageID.1166.)  Doctor Chaitoff did observe increased sensitivity in Plaintiff's left sole and diagnosed Plaintiff with lumbar spondylolisthesis and neuropathic pain syndrome.  (*Id.* at PageID.1166–67.)

From October 2016 to April 2018, plaintiff also sought treatment for his back and legs from the Headache and Pain Center of Palm Beach.  (*Id.* at PageID.1286–99, 1368–70.)  At Plaintiff's first visit, his physician, Doctor Robert Friedman, noted that he generally displayed normal strength, except for mild weakness in his plantar flexion and dorsiflexion of his left foot.  (*Id.* at PageID.1298–99.)  Based on his examination, Doctor Friedman believed that Plaintiff's foot pain was caused by sciatic neuropathy.  (*Id.* at PageID.1299.)  Doctor Friedman also ordered an EEG for Plaintiff, and based on the results, concluded that Plaintiff had suffered a traumatic brain injury ("TBI").  (*Id.* at PageID.1297, 1299.)  Shortly after his TBI diagnosis, Plaintiff took a memory assessment at a separate clinic and obtained an above average score.  (*Id.* at PageID.1194.)

Plaintiff returned to the Headache and Pain Center periodically over the next two years and reported consistent improvement in his left foot.  (*See id.* at PageID.1286–99, 1368–70.)  Indeed, by January 2017, Plaintiff reported that his pain has "significantly improved," and by April 2018, he "no longer required pain medication."  (*Id.* at PageID.1293,1368.)

Plaintiff also sought treatment for his TBI and anxiety.  In April 2018, Doctor Nicholas DePrima of the Palm Beach Neuroscience Institute conducted a neuropsychological evaluation of Plaintiff.  (*Id.* at PageID.1358–62.)  Doctor DePrima found that Plaintiff had "a few isolated areas of cognitive impairment" and diagnosed him

with a mild neurocognitive disorder, posttraumatic stress disorder, and adjustment disorder with depressed mood.  (*Id.* at PageID.1358.)  Doctor DePrima also noted that, compared to a prior, "incomplete evaluation" from 2017, Plaintiff improved with respect to his verbal memory and constructional praxis, but regressed as to his visuomotor sequencing speed and cognitive flexibility.  (*Id.*)  Doctor DePrima also signed an "residual functioning capacity assessment" form but failed to reach a conclusion on Plaintiff's functional capacity, and rather than answering the questions on the form, instructed the reader to reference the 2018 evaluation.  (*Id.* at PageID.1450–54.)

From 2016 through 2017, treatment notes from Plaintiff's primary care physician noted that he denied depression, suicidal thoughts, and psychotic symptoms.  (*Id.* at PageID.834, 1415–27.)  The notes further reported that Plaintiff's "thought process, judgment, insight, affect, and speech were all within normal limits."  (*Id.*)

Based on the previously mentioned medical evidence, the non-examining state medical consultant found that Plaintiff could perform a limited range of light work.  (*Id.* at PageID.898–901.)  The ALJ assigned "great weight" to this opinion, reasoning that it was consistent with the evidence in the record as it accounted for Plaintiff's extensive recovery. (*Id.* at PageID.832–33.)

### 2.  Plaintiff's Testimony at the Administrative hearing

The ALJ began the hearing by examining Plaintiff.  (*Id.* at PageID.847.)  Plaintiff testified that he had not worked since his injury and that he keeps himself busy doing "small tasks" throughout the day such as household chores, playing "video games" and visiting

family.   (*Id.* at PageID.849–50, 852.)  He also testified that he could drive and make prepared meals such as "oatmeal or cans of soup."  (*Id.* at PageID.852.)

Plaintiff stated that at the time of the hearing, he still had pain in his shoulder, back, and foot which he rated as a six to an eight on a scale of one to ten.  (*Id.* at PageID.853, 855.)  However, Plaintiff was advised by his doctors to not take pain medication.  (*Id.* at PageID.855.)  His doctors instead advised Plaintiff to treat his pain with exercises and stretching, but Plaintiff admitted that he had not attempted any exercises or stretching in a few weeks. (*Id.* at PageID.856.)  Plaintiff also took over-the-counter pain medications such as Tylenol which alleviated his pain slightly.  (*Id.*)

Plaintiff testified that his foot pain had improved, but not "significantly to where its cured."  (*Id.* at PageID.857.)  He described the pain in his foot as "numbness," and stated that it would sometimes spasm, which caused severe pain; however, Plaintiff could avert these spasms by avoiding certain positions with his foot.  (*Id.*)  His foot and back pain also prevented him from walking for more than twenty minutes or sitting for more than a couple hours.  (*Id.* at PageID.858.)  Further, Plaintiff alleged that because of weakness in his legs, he could only stand for thirty minutes before needing to sit down but admitted that he has never fallen.  (*Id.* at PageID.853–54.)  He also had seven herniated discs in his lower back that caused him to "hunch over."  (*Id.* at PageID.854.)

Plaintiff also reported problems with his concentration and short-term memory and testified that he had anxiety.  (*Id.* at PageID.853, 859.)  Plaintiff did not see a counselor because he doubted that counseling would be effective, but he took Xanax daily to treat his anxiety.  (*Id.*)  Plaintiff would experience panic attacks whenever he did not take Xanax.

(*Id.* at PageID.860.)  While Plaintiff stated that he did not have friends, he testified that he nonetheless got along "pretty well" with other people and would visit his family during the day.  (*Id.* at PageID.860–61.)

The ALJ then allowed Plaintiff's attorney to examine him.  (*Id.* at PageID.861.) Plaintiff's attorney asked him what would prevent him from working full time at a "simple job" that required little thought, did not require him to move heavy objects, and allowed hm to freely alternate between sitting and standing.  (*Id.* at PageID.861–62.)  Plaintiff responded that the "schedule" would be hard for him and that his concentration issues would inhibit his ability to work.  (*Id.* at PageID.862.)

Next, the ALJ allowed Plaintiff's attorney to question Plaintiff's mother.  (*Id.* at PAgeID.864.)  She testified that Plaintiff still had memory problems, for example, Plaintiff once bought some steaks, but after later seeing them in the refrigerator, could not remember buying them.  (*Id.*)  She also testified that she would drive Plaintiff to most places because he would get lost whenever he tried to drive to an unfamiliar place by himself.  (*Id.* at PageID.865.)  She also scheduled all of Plaintiff's medical appointments for him because Plaintiff would often forget to do so.  (*Id.*)

### 3.  The VE's Testimony at the Administrative Hearing

After Plaintiff's mother testified, the ALJ questioned the vocational expert ("VE"). (*Id.* at PageID.869.)  The ALJ began by assuming that Plaintiff had no past relevant work. (*Id.*)  The ALJ then asked the VE whether there were any jobs in the national economy that a hypothetical person of the same age, and educational level as Plaintiff could perform, provided that the hypothetical person could only perform light work, except that:

Such a person is limited to frequent pushing and pulling, such a person should never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch[,] and crawl. Such a person can frequently reach on the left. Such a person can occasionally operate foot pedals. Such a person should avoid hazards, including heights[,] and work with vibratory tools. Such a person should avoid extremes and cold temperatures, and wetness [sic]. Such a person is limited to the performance of simple, repetitive tasks, with no independent, work-related, decision-making. Such a person should not have regular changes to the work setting. Such a person should work at a job that allows for a flexible pace. Such a person should only occasionally have to interact with the general public.

(*Id.* at PageID.869–70.)

The VE replied that the hypothetical person could work as a cleaner, Dictionary of Occupational Titles ("DOT") code 323.687-014, light work, approximately 75,000 jobs; a machine feeder, DOT code 715.686-014, light work, approximately 184,000 jobs; an assembler, DOT code 706.684-022, light work, approximately 79,000 jobs; a sorter, DOT code 361.687-014, light work, approximately 83,000 jobs; and a packer, DOT code 559.687-074, light work, approximately 51,000 jobs. (*Id.* at PageID.870–71.)

The VE also testified that if the hypothetical person also required the ability to alternate between sitting and standing up to every half hour, then the cleaner and machine feeder jobs would be completely precluded and the available assembler jobs would be reduced by forty percent. (*Id.* at PageID.870.) Last, the VE testified that if the hypothetical person "could not remain on task without being reminded of his tasks at least several times throughout the day," then he would be precluded from any job. (*Id.* at PageID.871.) The VE clarified that while her testimony was partially based on the DOT, her testimony with respect to the hypothetical's restrictions on "off-task, the sit-stand option, flexible pace, no regular changes to setting working with the public, unilateral restrictions, simple repetitive

tasks, . . . [and] work related decision making" was based on her experience, not on the DOT. (*Id.* at PageID.871–72.)

## F. Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B) (2012). The regulations[2] carve the evidence into categories: "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513 (2016). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. 20 C.F.R. § 404.1513(a) (2016). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. 20 C.F.R. § 404.1513(d) (2016). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at

---

[2] Various amendments have been made to the regulations since Plaintiff filed his claim. *See, e.g.*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January 18, 2017) (effective March 27, 2017). Because the changes do not alter the outcome here—and, relatedly, they do not appear to exercise an impermissible retroactive effect on Plaintiff's rights, as the amendments are largely procedural changes in the process for analyzing evidence, *cf. Combs v Comm'r of Soc. Sec.*, 459 F.3d 640, 647 (6th Cir. 2006)—and the parties do not discuss them, it is unnecessary to determine whether they apply. Therefore, like many other courts, I will utilize the regulations in effect when Plaintiff filed his claim and the case was decided by the ALJ, along with the new regulations that explicitly apply to claims during this period. *See, e.g.*, 20 C.F.R. § 404.1527; *see generally* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed Reg. 62560, 62578 (September 9, 2016); *see also Rodriguez v. Colvin*, 3:15CV1723, 2018 WL 4204436, at *4 n. 6 (D. Conn. 2018) ("[T]he Court reviews the ALJ's decision under the earlier regulations because the plaintiff's application was filed before the new regulations went into effect." (citing *Maloney v. Berryhill*, No. 16-cv-3899, 2018 WL 400772, at *1 (E.D. N.Y. 2018) (same)); *Miller v. Comm'r of Soc. Sec.*, No. 1:17-cv-0718, 2018 WL 2773372, at *5 n. 3 (N.D. Ohio 2018) ("Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect. For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision."), *Rep. & Rec. adopted by* 2018 WL 2766020 (N.D. Ohio 2018); *Woodall v. Berryhill*, No. 1:17-cv-01289, 2018 WL 3133442, at *7 n. 3 (N.D. Ohio 2018) (applying the rules effective when the claimant applied for benefits), *Rep. & Rec. adopted by* 2018 WL 3126552 (N.D. Ohio 2018); *Meeks v. Comm'r of Soc. Sec.*, No. 4:17-cv-45, 2018 WL 1952529, at *4 n. 2 (E.D. Tenn. 2018) (applying the rules effective when the ALJ decided the case).

*2 (Aug. 9, 2006).  Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527 (2016).  Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC.  20 C.F.R. § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources.  20 C.F.R. § 404.1527(c).  The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c).  ALJs must also apply those factors to "other source" opinions.  *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed his claim before March 27, 2017, he is entitled to the benefit of the treating-source rule.  Under that rule, certain opinions from his treating physicians can receive controlling weight if they are "well-supported by medically acceptable clinical

13

and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2); *see also Wilson*, 378 F.3d at 544.  The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments.  20 C.F.R. § 404.1527(c)(2).  The ALJ does not owe a treating opinion deference on matters reserved to the Commissioner.  20 C.F.R. § 404.1527(d). Thus, the ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination.  20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).  Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion.  *Rogers*, 486 F.3d at 242.  For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence.  *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must also analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence

in the record and factors outlined in SSR 96-7p, 1996 WL 374186 (July 2, 1996).[3]

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ.

*See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir.1987).

Generally, an ALJ's credibility assessment can be disturbed only for a "compelling

reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v.

Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating

subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 96-7p, 1996

WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by

confirming that objective medical evidence of the underlying condition exists. The ALJ

then determines whether that condition could reasonably be expected to produce the

alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20

C.F.R. § 404.1529 (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v.

Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains

the extent of the work-related limitations by determining the intensity, persistence, and

limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2,

1996).

---

[3] Although the Commissioner has rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016), the underlying regulation has remained materially unchanged, *see* 20. C.F.R. § 404.1529(c), and I agree with the courts in this District that have continued to apply SSR 96-7p to cases arising prior to its rescission. *See, e.g.*, *Cooper v. Comm'r of Soc. Sec.*, No. 16-cv-13477, 2017 WL 3923984, at *3 (E.D. Mich. August 21, 2017), *Rep. & Rec. adopted by* 2017 WL 3891971 (E.D. Mich. Sept. 9, 2017); *Tuttle v. Comm'r of Soc. Sec.*, No. 16-11144, 2017 WL 2928021, at *6 n. 3 (E.D. Mich. June 9, 2017), *Rep. & Rec. adopted by* 2017 WL 2905125 (E.D. Mich. July 7, 2017).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective, confirming evidence forces the ALJ to consider the following factors:

(i)   [D]aily activities;
(ii)  The location, duration, frequency, and intensity of . . . pain;
(iii) Precipitating and aggravating factors;
(iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)   Treatment, other than medication, . . . received for relief of . . . pain;
(vi)  Any measures . . . used to relieve . . . pain.

20 C.F.R.§ 404.1529(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

**G.    Arguments and Analysis**

**1.    Step Two**

First, Plaintiff appears to broadly argue that the ALJ erred at step two. (ECF No. 21, PageID.738.) At step two, the ALJ was required to determine whether Plaintiff had any severe medically determinable impairments, or any severe combinations of medically

determinable impairments.  20 C.F.R. § 404.1520 (2016).  The ALJ found the following

severe impairments: "degenerative disc disease of the lumbar spine, degenerative joint

disease of the left shoulder, generalized anxiety disorder with depressed mood, and history

of a traumatic brain injury."  (ECF No. 25, PageID.827.)  Labelling these impairments as

"severe" meant that these impairments significantly limited Plaintiff's ability to perform

basic work activities.  20 C.F.R. § 416.920(c) (2016); (ECF No. 25, PageID.827.)  The ALJ

also found that Plaintiff's gastroesophageal reflux disease ("GERD") was not a severe

impairment because it was "properly controlled by adherence to recommended medical

management and medication compliance.  (ECF No. 25, PageID.827.)

In his motion for summary judgment, Plaintiff argues:

> Findings of fact and [c]onclusions of [l]aw in ALJ's decision; 2. The claimant
> has the following severe impairments: degenerative of disc disease of
> [l]umbar spine, [d]egenerative [j]oint [d]isease of left shoulder, generalized
> anxiety disorder with depressed mood[,] and a history of traumatic [b]rain
> [i]njury[,] significantly limits the ability to perform basic work activities as
> required by SSR[]85-28; then states there is objective evidence in medical
> record of an impairment that establishes only a slight abnormality or
> combination of abnormalities that would have no more than a minimal effect
> on claimant[']s ability to meet the basic needs of work activity; [sic]

> This does not refer or detail these findings, yet refers to an acid reflux disease
> (GERD) as [d]octors [sic] [o]pinions were stating severity of [i]njuries from
> [a]ccident[.]

(ECF No. 21, PageID.738.)  Although Plaintiff's argument is not clear, I construe

his motion liberally due to his *pro se* status.  *See Works ex rel. A.R.W. v. Comm'r of Soc.*

*Sec.*, 886 F. Supp. 2d 690, 697 (W.D. Mich. Mar. 22, 2012).  It appears that Plaintiff faults

the ALJ for not discussing his severe impairments at greater length at step two. [4] However, this Court cannot remand to correct "errors" that were favorable to the claimant. First, 42 U.S.C. § 405(g) (2012) only grants this Court authority to review denials of benefits. Notably absent from the statute is any language allowing courts to review decisions that grant benefits to claimants. Thus, if courts can only review denials of benefits, then they have no reason to review findings that are favorable to claimants. For this reason, review of Plaintiff's severe impairments would frustrate this Court's limited jurisdiction under § 405(g). *See Holdridge v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 316, 326 (W.D.N.Y. 2018) ("[T]his finding was favorable to Plaintiff, and does not support reversal or remand.").

Second, Plaintiff lacks standing under Article III to challenge a finding that was favorable to him. To have standing, a social security claimant may only appeal denials of benefits. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (holding that plaintiffs must assert an "actual or imminent" injury to have standing); *Robertson v. Colvin*, 564 F. App'x 931, 934 (10th Cir. 2014) (holding that a claimant who was awarded disability benefits lacked standing to challenge the Commissioner's determination on the grounds that the decision harmed her reputation). If claimants only have standing to challenge denials, then it follows that claimants only have standing to challenge the

---

[4] The Commissioner also interprets Plaintiff's argument as mistakenly believing that the ALJ's discussion of his GERD was actually a discussion of his severe impairments. (ECF No. 24, PageID.788–89.) The Commissioner argues that Plaintiff incorrectly faults the ALJ for finding severe impairments while also finding that the severe impairments were "established [by] 'only a slight abnormality.'" (*Id.*) However, Plaintiff appears to recognize that this discussion "refers to an acid reflux disease (GERD)," not his severe impairments. (ECF No. 21, PageID.738.) Even under the Commissioner's interpretation, however, I find no error because the ALJ did not prejudice Plaintiff by finding severe impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii) (2016) (providing that a claimant passes step two by displaying at least one severe medically determinable impairment).

findings that supported the Commissioner's denial of benefits—a claimant cannot hide behind an unfavorable judgment to challenge findings that supported an award of benefits. *See* Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Court §7:2 (2019) (("Under Article III of the Constitution, a party may not appeal from a favorable judgment simply to obtain review of findings it deems erroneous."). Moreover, after determining Plaintiff's severe impairments, the ALJ had nothing further to discuss at step two, and was obligated to move on to the subsequent steps in the sequential evaluation process. 20 C.F.R. § 416.920(a)(4). Accordingly, the ALJ cannot correct this "error" on remand—Plaintiff has already received the most favorable finding possible, at step two, with respect to these impairments.

To the extent that Plaintiff's argument encompasses a challenge to the ALJ's finding that GERD was not a severe impairment, I also suggest that this finding was supported by substantial evidence. The ALJ reasoned that Plaintiff's GERD was "managed medically" and appeared "to be properly controlled by adherence to recommended medical management." (ECF No. 25, PageID.827; *see also id.* at PageID.1055–61, 1321, 1415–16.) Additionally, the ALJ noted that "no aggressive treatment was recommended or anticipated for this impairment." (ECF No. 25, PageID.827.) Further, because the ALJ was obligated to move on to the next step in the sequential analysis after finding just one severe impairment, the fact that Plaintiff's GERD was "not deemed to be severe at step two is . . . legally irrelevant" as long as the ALJ considered both "severe and non[-]severe impairments in the remaining steps of the sequential analysis." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *accord Maziarz v. Sec'y of Health and Human Servs.*, 837

F.2d 240, 244 (6th Cir. 1987) (holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe). Indeed, at step four the ALJ stated that she "considered all" of Plaintiff's "symptoms." (ECF No. 25, PageID.829–30.) While the ALJ did not discuss Plaintiff's GERD specifically at step four, this is not surprising given that at step two, she explained that Plaintiff's GERD was "properly controlled" by adherence to relatively mild treatment. (*Id.* at PageID.827.) Accordingly, I suggest that the ALJ considered Plaintiff's GERD at step four.

For these reasons, I suggest that the ALJ's step two findings are supported by substantial evidence.

## 2. Step Three

Next, Plaintiff argues that the ALJ did not rely on substantial evidence in finding that Plaintiff did not meet listing 11.18, the listing for traumatic brain injuries ("TBI").[5] The ALJ did not discuss listing 11.18; however, ALJs are not required to discuss every listing in their decisions; and for good reason—"[t]here are a hundred or so listings" and it would be impractical for an ALJ to discuss every listing in his or her decision. *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013). Accordingly, an ALJ need not "discuss listings that the applicant clearly does not meet." *Id.*; *see also Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014).

Where a claimant argues that they met a listing that was not discussed by the ALJ,

---

[5] Although Plaintiff only argues that he met listing 11.18 and does not argue that his impairments medically equaled the listing, because both arguments involve a similar analysis, and because Plaintiff filed his motion for summary judgment *pro se*, I do not consider this argument waived. *See generally United States v. Smotherman*, 838 F.3d 736, 738 (6th Cir. 2016) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed.'")).

the district court will remand only if the claimant shows that "the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled . . . .'" *Sheeks*, 544 F. App'x at 641 (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir.1990)).  To do so, "the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Smith-Johnson*, 579 F. App'x at 432.

> To meet listing 11.18, a claimant must show:
>
> A. Disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, persisting for at least [three] consecutive months after the injury; or
>
> B. Marked limitation in physical functioning, and in one of the following areas of mental functioning, persisting for at least [three] consecutive months after the injury: 1. Understanding, remembering, or applying information; or 2. Interacting with others; or 3. Concentrating, persisting, or maintaining pace; or 4. Adapting or managing oneself.

20 C.F.R. Part 404, Subpt. P, App'x 1, § 11.18 (2019) (citations omitted). [6]

### a. Paragraph A

First, Plaintiff cannot raise a substantial question as to whether he met or medically equaled paragraph A of listing 11.18.  The record appears to contain no evidence of disorganized "motor function in two extremities."  At most, Plaintiff had "likely" nerve issues in only his left foot.  (ECF No. 25, PageID.853, 857, 1177, 1286–99.) [7]  Moreover,

---

[6] I recognize that the current requirements in listing 11.18, which are cited by both parties, were promulgated after Plaintiff's claim was originally filed.  However, the Sixth Circuit has held that changes to listing requirements are generally "procedural" and therefore do not raise retroactivity concerns.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 645–49 (6th Cir. 2006).  Therefore, although the requirements of listing 11.18 have changed between Plaintiff's original claim and the time of the ALJ's decision, the elements of listing 11.18 at the time of his decision are applicable.

[7] Plaintiff was also diagnosed with bursitis in his left shoulder; however, while listing 11.18 requires disorganized motor functioning in two extremities, § 11.00(D)(1) specifies that the disorganized

the record does not raise a substantial question regarding whether Plaintiff was extremely limited in his ability to stand up, maintain balance while walking, or use his upper extremities.  *See* 20 C.F.R. Part 404, Subpt. P, App'x 1, § 11.18(A).  An "[e]xtreme limitation means the *inability* to stand up . . ., maintain balance" while standing or walking, or use one's "upper extremities  . . . ."  *Id.* § 12.00(D)(2).  While one examiner noted that Plaintiff walked with an antalgic gait, the majority of examiners observed that Plaintiff regularly walked with a normal gait.  (ECF No. 25, PageID.1057, 1065, 1166, 1176, 1255, 1276, 1306, 1308, 1372, 1378, 1390, 1393, 1396, 1399, 1406); *see* 20 C.F.R. Part 404, Subpt. P, App'x 1, § 12.00(D)(2)(b) ("Extreme limitation means the inability to stand up from a seated position, maintain balance in a standing position and while walking, or use your upper extremities to independently initiate, sustain, and complete work-related activities.").  The ALJ also found that "there was no indication that [Plaintiff] was unable to perform fine and gross movements effectively."  (ECF No. 25, PageID.828.)

With respect to his ability to use his upper extremities, Plaintiff notes a diagnosis of "mild posttraumatic subacromial-subdeltoid bursitis" in his left shoulder; however, the regulations require that Plaintiff display nearly complete "loss of function of *both* upper extremities."  *See* 20 C.F.R. Part 404, Subpt. P, App'x 1, § 11.00(D)(1), (2)(c) (emphasis added).  A "mild" impairment of only one upper extremity does not meet this requirement.  (ECF No. 25, PageID.1111–12); 20 C.F.R. Part 404, Subpt. P, App'x 1, § 11.00(D)(1), (2)(c).

---

functioning must be a result of the claimant's neurological disorder.  Therefore, Plaintiff's left shoulder cannot count as one of his two disorganized extremities for purposes of listing 11.18.

### b.  Paragraph B

Nor can Plaintiff raise a substantial question as to whether he met or medically equaled paragraph B of listing 11.18.  First, paragraph B requires that Plaintiff show a "marked limitation in physical functioning," meaning that he is "seriously limited in the ability to independently initiate, sustain, and complete work-related physical activities, . . . such as standing, balancing, walking, using both upper extremities for fine and gross movements . . ." for at least three consecutive months following the injury.  20 C.F.R. Part 404, Subpt. P, App'x 1, §§ 11.00(G)(2)(a), § 11.18(B).  The record contains no evidence that could meet these requirements.  As discussed under paragraph A, Plaintiff walked with a normal gait, effectively performed "fine and gross movements," and suffered from only a "very mild" impairment in his shoulder.  (ECF No. 25, PageID.828, 1057, 1065, 1111–12, 1166.)

Assuming that Plaintiff could raise a substantial question as to whether he had a marked limitation in his physical functioning, to meet paragraph B, he would then have to raise a substantial question as to whether he had a marked limitation in one of four areas of mental functioning.  20 C.F.R. Part 404, Subpt. P, App'x 1, § 11.18(B).  However, the ALJ assessed each of these areas of mental functioning under a different listing and found only a moderate limitation in each category.  I suggest that the ALJ's findings were supported by substantial evidence.  *See Sisk v. Saul*, No. 3:19-cv-0013, 2020 WL 1472415, at *3 (E.D. Ky. Mar. 26, 2020) ("[T]here can be no error in the ALJ's alleged failure to address listing 12.07 relating to somatic symptom disorders and find her disabled under that listing since he did, in fact, address the identical criteria under listing 12.04.").

First, with respect to understanding, remembering, or applying information, the ALJ acknowledged Plaintiff's self-reported difficulties, but noted that Plaintiff could "prepare meals, take medications, and play video games." (ECF No. 25, PageID.828, 852, 859–60, 1211, 1255, 1359.) Moreover, Plaintiff could effectively communicate with his health care providers regarding his medical history, and a memory evaluation performed in 2016 displayed normal results. (*Id.* at PageID.828, 1194.) Similarly, as to Plaintiff's ability to interact with others, the ALJ found that although Plaintiff reported having no friends, he appeared to be close with his family and "had a good rapport with" his health care providers who described him as "pleasant and cooperative." (*Id.* at PageID.828, 847–48, 852, 860–61, 867, 1255, 1295, 1360, 1365, 1370, 1418, 1420–21.)

With respect to Plaintiff's ability to concentrate, persist, and maintain pace, the ALJ again considered Plaintiff's reports of difficulties with concentration, but noted that Plaintiff admitted that he could prepare meals and play video games for a "few hours throughout the day." (*Id.* at PageID.828, 940, 1360.) Additionally, Plaintiff's alleged problems with concentration were inconsistent with medical evidence which found that Plaintiff's attention, memory, and cognitive flexibility were within a normal range. (*Id.* at PageID.1359–60.) Last, as to Plaintiff's ability to adapt or manage himself, the ALJ found that while Plaintiff reported that he could not manage his finances, she noted that Plaintiff could handle his self-care and personal hygiene. (*Id.* at PageID.829, 861, 1210, 1365.) Further, medical evidence showed that Plaintiff had "appropriate grooming and hygiene, no problem getting along with providers and staff, normal mood and affect, and no problems with temper control." (*Id.* at PageID.1064, 1139, 1154, 1166, 1274, 1276, 1306,

24

1308, 1365.)

Further, Plaintiff points to no evidence in the record to support his argument that he met paragraph B of the listing—Plaintiff merely quotes the language of the listing and summarily asserts that he met the elements of listing 11.18.  (ECF No. 21, PageID.737–38.)  However, it is not this Court's role to comb the record for substantial evidence that would support Plaintiff's argument—"judges are not like pigs, hunting for truffles buried in" the administrative record.  *Thomas v. Halter*, 131 F. Supp. 2d 942, 945 (E.D. Mich. 2001) (quotation marks omitted) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)); *accord Marko v. Comm'r of Soc. Sec.*, No. 2:16-cv-12204, 2017 WL 3113246, at *3 (E.D. Mich. Jul. 21, 2017); *Kinkle v. Comm'r of Soc. Sec.*, No. 13-11369, 2014 WL 4206950, at *10 n.1 (E.D. Mich. Aug. 25, 2014).  Accordingly, I suggest that Plaintiff has not raised a substantial question as to whether he has met or medically equalled paragraph B of the listing.

Notwithstanding the requirements of listing 11.18, Plaintiff appears to argue that the ALJ must have found that Plaintiff met the listing because Plaintiff had been diagnosed with a TBI.  However, 20 C.F.R. § 404.1525(d) (2016) provides that a claimant's "impairment(s) cannot meet the criteria of a listing based only on a diagnosis."  *Accord Manzi v. Saul*, No. 20-1292, 2021 WL 1339743, at *5 (C.D. Cal. Apr. 9, 2021) ("Mere diagnosis of a [TBI], however, is insufficient to establish disability.")  Rather, "[t]o meet the requirements of a listing, [a claimant] must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."  20 C.F.R. § 404.1525(d).  However, for the previously discussed reasons, I suggest that Plaintiff has not raised a

substantial question as to whether he has met the requirements of listing 11.18.

### 3. Residual Functioning Capacity

Plaintiff next argues that the ALJ's residual functioning capacity ("RFC") finding was not supported by substantial evidence. The ALJ determined that Plaintiff had an RFC to perform a limited range of light work, and I suggest that the ALJ' RFC finding is supported by substantial evidence.

First, as to Plaintiff's physical limitations, the ALJ began by recognizing Plaintiff's alleged symptoms. (ECF No. 25, PageID.830.) Specifically, Plaintiff alleged low back pain, shoulder pain, and numbness in his lower extremities. (*Id.*) Due to the numbness in his lower extremities, Plaintiff alleged that he had "difficulty standing for more than [thirty] minutes" and could walk for only ten to twenty minutes continuously. (*Id.*) However, the ALJ found that the "intensity, persistence, and limiting effects of these symptoms" was inconsistent with the medical evidence in the record. (*Id.*)

Specifically, Plaintiff's shoulder pain was attributed to "low-grade muscle strain" which required only a "conservative treatment" plan consisting of icing the affected shoulder and performing physical therapy. (*Id.* at PageID.831, 1111, 1154.) The ALJ noted that this treatment was successful and Plaintiff's shoulder pain improved "significantly." (*Id.* at PageID.831, 1155.) As for Plaintiff's left foot pain, Plaintiff reported severe pain shortly after his initial injury, and was diagnosed with sciatic neuropathy. (*Id.* at PageID.832, 1298–99.) However, just a couple months later, after receiving injections, Plaintiff's pain significantly improved. (*Id.* at PageID.832, 1293–94.) By April 2018, Plaintiff's foot pain continued to improve to a point where he no longer

26

needed pain medication. (*Id.* at PageID.832, 1368.) Although Plaintiff's shoulder pain, sciatic neuropathy, and "disc bulging of his lumbar spine" had essentially resolved, the ALJ still included several physical limitations in Plaintiff's RFC, consistent with the opinion of the non-examining medical consultant. (*Id.* at PageID.829, 832, 888–901, 1166, 1306, 1368.)

As to Plaintiff's TBI and mental limitations, the ALJ again considered Plaintiff's alleged symptoms—that he suffered from memory loss, had difficulty concentrating, and experienced anxiety—but determined that the degree of these symptoms was inconsistent with the medical evidence in the record. (*Id.* at PageID.830.) In December 2016, Plaintiff underwent a cognitive assessment and "scored [twenty-nine] out of [thirty], wherein a score of [twenty-six] is considered normal . . . ." (*Id.* at PageID.832, 1194.) Two years later, "[P]laintiff underwent a neuropsychological evaluation" with the Palm Beach Neuroscience Institute where he was diagnosed with a "mild neurocognitive disorder." (*Id.* at PageID.833, 1358.) The examination found that Plaintiff had "a few areas of isolated cognitive impairment," such as naming, cognitive flexibility, and non-contextual delayed and immediate verbal memory, but noted that his performance was intact for many other areas. (*Id.*)

At the same examination, Plaintiff was diagnosed with mild anxiety and moderate depression. While Plaintiff displayed "agoraphobia, generalized anxiety, [and] panic attacks," he also "denied having visual hallucinations, delusions, or suicidal ideation." (*Id.* at PageID.834, 1413–27.) Considering Plaintiff's mental and emotional symptoms, the ALJ tailored Plaintiff's RFC to restrict him to "low stress work" with "no regular changes

27

in the work setting." (*Id.* at PageID.829, 833–34, 1358, 1361.)  The ALJ further limited Plaintiff to work that would be done "at a flexible pace" and required "no more than occasional interaction with the general public. (*Id.* at PageID.829, 833–34.)  I suggest that these limitations, as well as the limitations related to Plaintiff's physical symptoms, are supported by substantial evidence.

In rebuttal, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because it allegedly cites to a treatment note from October, 2016, where a family physician stated that Plaintiff made a "complete recovery" from his injury.  Plaintiff argues that subsequent medical records from specialists contradict this assessment.  (*Id.* at PageID.1055.)  However, the ALJ never cited this statement in her decision, and, contrary to the physician's comment that Plaintiff made a "complete recovery," the ALJ acknowledged that Plaintiff had enduring mental and physical impairments and accounted for these in her restrictive RFC.  (*Id.* at PageID.828–34.)  Moreover, even if subsequent findings from specialists could support a more restrictive RFC, the ALJ's decision cannot be overturned because it is supported by substantial evidence. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

Plaintiff also argues that the ALJ erred by under-crediting Doctor Nicholas DePrima's mental RFC form.  On December 11, 2018, Doctor DePrima filled out a mental RFC form.  However, Doctor DePrima did not reach a conclusion on this form and failed to opine on Plaintiff's ability to work.  (ECF No. 25, PageID.1450–54.)  The form included several questions related to Plaintiff's functional capacity, but instead of answering these questions, Doctor DePrima simply instructed the reader to refer to the earlier report he

28

prepared at the Palm Beach Neuroscience Institute.  (*Id.*)  However, while this prior report opined on the nature and severity of Plaintiff's mental impairments, it did not discuss his functional limitations.  (*Id.* at PageID.1358–61.)  Plaintiff only takes issue with the RFC form, not Dr. DePrima's earlier evaluation.

Under 20 C.F.R. § 404.1527(b) (2019), ALJ's are required to evaluate and weigh the opinions of all medical opinions in the record.  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) . . . ."  *Id.* § 404.1527(a)(1).  When weighing a medical opinion, the ALJ should consider the supportability of the opinion, the consistency of the opinion, whether the source examined the claimant, whether the source treated the claimant, and any other relevant factor.  *Id.* § 404.1527(c).

Dr. DePrima's RFC "assessment" is not an opinion from which the ALJ could evaluate Plaintiff's RFC.  The assessment contains no "judgments" on Plaintiff's functional limitations, and the ALJ properly acted within her discretion by affording the assessment no weight.[8]  *See* 20 C.F.R. § 404.1527(a)–(c).  Moreover, the ALJ discussed the Palm Beach Neuroscience Institute report at length in his RFC discussion and accounted for its assessments in his RFC finding, giving Plaintiff "the benefit of the doubt."  (ECF No. 25, PageID.833–34.)

---

[8] The assessment does contain one "judgment" concerning Plaintiff's impairments—Doctor DePrima opined that he did not believe Plaintiff was a malingerer.  (*Id.* at PageID.1450.)  However, this opinion is unrelated to Plaintiff's functional limitations, and despite affording no weight to Dr. DePrima's opinion, the ALJ appears to have agreed that Plaintiff is not a malingerer by crediting the report from the Palm Beach Neuroscience Institute, which was signed by Doctor DePrima, and finding an RFC that accounted for Plaintiff's mental limitations.  (*Id.* at PageID.833–34, 1361.)

It appears, however, that Plaintiff recognizes the inadequacy of Doctor DePrima's opinion, and faults the ALJ for rendering a decision without access to a "complete evaluation" from Doctor DePrima. (ECF No. 21, PageID.738.) But ALJ's are not required to have complete opinions from each medical source before rendering a decision. The regulations simply require ALJs to weigh the credibility of medical opinions in the record—which the ALJ properly did here. 20 C.F.R. § 404.1527(c).

Plaintiff next argues that the ALJ's RFC finding was deficient because the ALJ failed to discuss the opinions of two treating physicians, Doctors Robert Friedman and Philip Scuderi, who opined that Plaintiff was "unable to work" from September 2016 through January 2017. (ECF No. 25, PageID.1151–52, 1285.) However, because neither doctor rendered an opinion entitled to deference under the treating source rule, I suggest that the ALJ properly evaluated these sources.

Under 20 C.F.R. § 404.1527(c)(2), "[a]n ALJ must give the [medical] opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). However, "[M]edical source opinions on issues reserved to the Commissioner . . . are not medical opinions" and are therefore not given "any special significance." 20 C.F.R. § 404.1527(d). The regulations further provide that opinions that a claimant is "unable to work" concern issues reserved to the Commissioner. *Id.* § 404.1527(d)(1); *Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 432 (6th Cir. 2016). Accordingly, the ALJ did not err by failing to give controlling weight to the doctors'

opinions.

Plaintiff makes one final argument to undercut the ALJ's RFC finding.  In the Commissioner's motion for summary judgment, the Commissioner mentions that Plaintiff was "reluctant" to undergo a procedure that would treat his lower back pain—implying that Plaintiff's back pain may not have been as severe as alleged.  (ECF No. 24, PageID.779.)  Although it is true that an ALJ may "not draw any inferences about an individual's symptoms . . . without first considering any explanations . . . or other information in the case record, that may explain . . . failure to seek medical treatment," the ALJ never mentioned Plaintiff's failure to get this procedure in his opinion, and even without this fact, I suggest that the ALJ's RFC finding is supported by substantial evidence. SSR 96-7p, 1996 WL 374186, at *7 (Jul 2, 1996).

### 4.  Plaintiff's Injury

Next, Plaintiff argues that the ALJ mischaracterized the nature of his injury throughout the decision.  While the ALJ states that Plaintiff "fell off of a ladder at work while trimming tree limbs near a power line," (ECF No. 25, PageID.831) Plaintiff specifies that the "[accident was an electrocution of high voltage wire . . . which caused a stroke, then caused [a] fall" from a "[thirty foot] ladder."  (ECF No. 21, PageID.738.)  However, under the Social Security Act, disability is determined by the nature of a claimant's impairments, not the nature of a claimant's injury.  42 U.S.C. § 423(d)(1)(A) (2012). Unless Plaintiff can show that the ALJ's "mischaracterization" of the initial injury led her to misrepresent Plaintiff's subsequent impairments, Plaintiff cannot establish that the ALJ's characterization of the injury resulted in error at any step in the evaluation process.

31

Plaintiff fails to establish any nexus between the ALJ's characterization of Plaintiff's injury and any misrepresentation of Plaintiff's impairments.  Indeed, the ALJ discussed Plaintiff's impairments and medical record in considerable detail during her discussion of Plaintiff's RFC.  (ECF No. 5, PageID.831–35.)  Further, the ALJ did not undersell the severity of Plaintiff's initial injury by stating that Plaintiff fell from a ladder "while trimming tree limbs near a power line" and "was found on the ground unresponsive" requiring defibrillation "to regain his vital signs."  (*Id.* at PageID.831.)  Regardless of the minutiae of Plaintiff's initial injury, I suggest that the ALJ relied on substantial evidence in evaluating Plaintiff's impairments at all steps throughout the sequential evaluation process.

### 5.  Medical Records

Last, Plaintiff argues that the ALJ ignored Plaintiff's 2016 through 2018 medical records from the Headache and Pain Center which contain notes from periodic follow-up visits.  While ALJs are required to consider all relevant evidence in the record when rendering a decision, they need not explicitly "refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014); 20 C.F.R. §§ 404.1527(b), 416.920b; *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241–42 (6th Cir. 2002) (holding that an ALJ erred by ignoring "a substantial portion" of the claimant's medical history).  Where an ALJ states that he or she has considered the entire record, the district court will take the ALJ at his or her word.  *Hackett v. Barnhart*, 395 F.3d 1168, 1172–73

(10th Cir. 2005); *Harris v. Colvin*, 584 F. App'x 526, 527 (9th Cir. 2014).

Here, not only did the ALJ state at the outset of his opinion that she considered all of the evidence in the record, but her explanation of Plaintiff's RFC contains a discussion of the records Plaintiff alleges were "not considered." (ECF No. 25, PageID.827, 831–32.) The ALJ discussed Plaintiff's first visit to the Headache and Pain Center at length and summarized the following two years of records by focusing on two visits—one in January of 2017 and one in April of 2018—both of which found that Plaintiff's conditions had improved "significantly." (*Id.* at PageID.831–32.) Moreover, while the ALJ may not "cherry pick" evidence that supports a finding of disability, there is no indication that the ALJ ignored any evidence from these records that would have been favorable to Plaintiff. (*Id.*); *see White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). Accordingly, I suggest that the ALJ adequately considered Plaintiff's medical records from the Headache and Pain Center.

### H.    Conclusion

For these reasons, I conclude that substantial evidence supports the ALJ's decision. Consequently, I recommend **DENYING** Plaintiff's Motion, (ECF No. 21), **GRANTING** the Commissioner's Motion (ECF No. 24), and affirming the decision.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy."

Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: September 29, 2021

S/ Patricia T. Morris
Patricia T. Morris
United States Magistrate Judge